<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BERNARD HEINZ, | |
| Plaintiff, | |
| v. | Civil No. 19-8778 (RBK/KMW) |
| DUBELL LUMBER CO., | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiff Bernard Heinz Renewed Motion for Class Certification (Doc. No. 11) and Motion for Default Judgment (Doc. No. 12). This motion is unopposed. For the reasons set forth below, Plaintiff's Motion for Class Certification is **GRANTED**, and Motion for Default Judgment is **DENIED**.

**I.   BACKGROUND**

Plaintiff, a former employee of Defendant Dubell Lumber Company, contends he and at least 157 other employees were terminated without timely notice as required under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 9 U.S.C. § 2101 et seq., and the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act ("New Jersey WARN Act"), N.J.S.A. 34:21–1 et seq.

   **A.  Factual Background**

Defendant Dubell Lumber Company, a Medford-based maker and supplier of retail lumber and building materials, maintained facilities throughout New Jersey, including locations in Cherry

1

Hill, Millville, Winslow, Vineland, and Pleasantville. (Doc. No. 1, Compl. at ¶ 4). Plaintiff and at least 100 similarly situated, full time workers were employed by Defendant up until February 9, 2019. (*Id.* at ¶ 14). Defendant's employees, in the aggregate, worked more than 4,000 hours per a week. (*Id.* at ¶ 28).

On February 6, 2019, Defendant notified Plaintiff and the similarly situated employees that it would be closing its operations and laying off employees at the facilities. (*Id.* at ¶ 13). Presumably, this notice was sent by mail.[1] (Doc. No. 11-2, Brief at 11). Plaintiff was terminated on February 9, 2019. (*Id.* at ¶ 15). Within thirty days of February 9, 2019, Defendant laid off approximately one hundred and fifty-seven full-time employees. (*Id.* at ¶ 14).

On March 20, 2019, Plaintiff initiated this action by filing his Complaint. (Doc. No. 1). On May 7, 2019, a John Bambach executed a waiver of service of the summons on behalf of Defendant. (Doc. No. 4). Despite executing this waiver, Defendant never filed an answer or other responsive pleading. As such, May 28, 2019, the Clerk entered default against Defendant at Plaintiff's request. (Doc. No. 5). On July 8, 2019, Plaintiff filed a Motion for Class Certification and Motion for Default Judgment. (Doc. No. 7).

This Court denied Plaintiff's motion for class certification because his brief was devoid of any mention of "ascertainability"—an implicit requirement for class certification that the Plaintiff bears the burden of establishing. (Doc. No. 9). Plaintiff's motion for default judgment was also denied because entering default judgment against Defendant would prevent certification of the proposed classes. (*Id.*). Both motions were denied without prejudice and on March 24, 2020,

---

[1] It is not clear from Plaintiff's brief whether the February 6, 2019 notice was issued by mail. But they seem to suggest as much by the statement that "[t]here is likely even a mailing list within those records pursuant to which the February 6, 2019, notice was issued." (Doc. No. 11-2, Brief at 11).

2

Plaintiff filed the present, renewed motions for class certification and default judgment. (Doc. No. 11, 12).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 23

It is a plaintiff's burden to demonstrate that a class action is a proper vehicle for a lawsuit. *Hayes v. Wal–Mart Stores*, Inc., 725 F.3d 349, 354 (3d Cir.2013) (citing *Comcast Corp., v. Behrend*, U.S., 133 S.Ct. 1426 (2013)). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." To obtain class certification, plaintiffs must satisfy all four requisites for Rule 23(a) and at least one part of Rule 23(b). *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345(2011). As is relevant here, class certification is permissible under Rule 23(b)(3) when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* at 616.

A plaintiff must show that these requirements are met by a preponderance of the evidence, and a court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a court should certify a class only if it finds, after a "rigorous analysis," that Rule 23's requirements are met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Further, courts must analyze each of Rule 23's requirements separately, rather than conflating two or more requirements together. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 172 (3d Cir. 2015) (emphasizing that "[p]recise analysis of relevant Rule 23 requirements will always be necessary.").

### B. WARN Act

The purpose of the Worker Adjustment and Retraining Notification Act is to protect workers and their families by providing them with advance notice of a layoff. 20 C.F.R. § 639.1(a). To that end, the WARN Act mandates that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to each affected employee. 29 U.S.C. § 2102(a)(1). This 60-day notice requirement is the minimum. 20 C.F.R. § 639.2.

The WARN Act's requirements only apply to certain types of employers. Specifically, those who employ: (1) 100 or more employees, part-time employees; and (2) 100 or more employees who in the aggregate work at least 4,000 hours per week [exclusive of overtime]. 29 U.S.C. § 2101(a)(1)(A), (B).

If an employer fails to give the requisite notice, the employees may sue for backpay for each day of the violation. *United Food and Commercial Workers Union Local 751 v. Brown*

*Group, Inc.*, 517 U.S. 544, 545–546 (1996). Likewise, employers who violate the WARN Act are liable for benefits under certain employee benefit plans and for the cost of certain medical expenses incurred during the employment loss. 29 U.S.C. § 2104(a)(1)(B).

### C. New Jersey WARN Act

The New Jersey WARN Act was modeled after its federal counterpart and they only diverge in the type of damages available. *DeRosa v. Accredited Home Lenders, Inc*., 420 N.J. Super. 438, 453 (App. Div. 2011). The Act provides if an employer conducts a mass layoff, it shall provide not less than 60 days' notice of the termination to each employee who is being terminated. N.J. Stat. Ann. § 34:21–2(a) (2007). If the employer does not provide the required 60 days' notice, the employee must receive severance pay equal to one week of pay for each full year of employment. N.J. Stat. Ann. § 34:21–2(b) (2007).

Because they share the same purpose—protecting workers and communities by requiring employers to provide notice of plant closings and mass layoffs—New Jersey courts often look to the federal WARN Act regulations and case law for guidance in interpretation the New Jersey Act. *DeRosa*, 420 N.J.Super. 438, 22 A.3d at 36.

### III. DISCUSSION

Before considering Rule 23(a) and Rule 23(b)(3), we must address two preliminary matters: (1) the class definition and claims to be given class treatment; and (2) whether the class is currently and readily ascertainable based on objective criteria.

### A. Preliminary Matters

#### i. Class Definition and Claims to be Given Class Treatment

An order that certifies a class action must define the class and the class claims, issues or defenses. Fed.R.Civ.P. 23(c)(1)(B). Specifically, "the text of the order or an incorporated opinion

5

must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues, or defenses to be treated on a class basis." *Wachtel v. Guardian Life Ins. Co*., 453 F.3d 179, 187 (3d Cir.2006).

Plaintiff seeks to certify two classes—one under the federal WARN Act and the other under the NJ WARN Act. Under the federal WARN Act, the class definition is:

> all persons who worked at or reported to one of Defendant's Facilities and were terminated without cause on or within thirty (30) days of February 9, 2019, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings by Defendant on or within 30 days of February 9, 2019.

For the NJ WARN Act, the class definition is:

> all persons who worked at or reported to one of Defendant's Facilities and were terminated without cause on or about February 9, 2019.

These proposed class definitions set forth readily discernible, clear, and precise parameters for determining class membership. In fact, a substantially similar class definition was approved in *Ramcharan v. A.F.L. Quality, Inc*., No. 1:12-CV-07551, 2014 WL 4388579, at *8 (D.N.J. Sept. 5, 2014), on reconsideration in part, No. CIV. 12-7551 RMB/AMD, 2015 WL 4275534 (D.N.J. Apr. 14, 2015).

The claims to receive class treatment are:

a. A claim for violation of the WARN Act, 29 U.S.C. § 2104, for failure to provide at least 60 days' advance notice of termination; and

b. A claim for violation of the NJ WARN ACT, N.J. Stat. Ann. § 34:21–2(a), for failure to provide at least 60 days' advance notice of termination

### ii. Ascertainability

On the initial motion for class certification, Plaintiff faltered by failing to show that class membership was ascertainable. Because this implicit requirement was not even mentioned, we

denied Plaintiff's motion without prejudice. Now Plaintiff argues both proposed classes are based on objective criteria and there is a reliable and practical method for identifying whether putative class members fall within the class definition. We agree.

An essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013). There are two important elements for ascertainability: (1) the class must be defined with reference to objective criteria; and (2) there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

While these general principles are easily stated, the decisions of this circuit suggest this branch of law is something less than a seamless web. The first requirement of ascertainability, objective criteria, is not difficult to satisfy. It simply requires that the inverse not be true. That is, a class cannot be defined with reference to subjective criteria. *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 n.3 (3d Cir. 2017) (noting a class definition that depends on subject criteria, like a class members' state of mind, will not satisfy the objective criteria requirement); *see also Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir.2004) (holding that "defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation"), abrog. on other grounds by *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3d Cir. 2008), as amended (Jan. 16, 2009). Thus, a plaintiff does not need to establish

an objective way of determining class membership at the certification stage, only that there is "objective criteria" for class membership. *City Select Auto Sales Inc.*, 867 F.3d at 441.[2]

Courts seem to be mired down by the second requirement—the need for a reliable and administratively feasible mechanism to determine class membership. At a surface level, the mechanism proposed is not reliable if it is based on the mere "say so of putative class members." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013). In other words, the putative class members' affidavits, by themselves, are not enough to demonstrate there is a reliable mechanism to determine class membership. These affidavits need to be combined with other reliable indicia in order to satisfy this requirement. *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Similarly, the mechanism is not administratively feasible "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). This implicit requirement does not mean, however, that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that "class members *can* be identified." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), as amended (Apr. 28, 2015). Accordingly, there is no records requirement at the class certification stage. *Id.* at 164; *see also City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (noting that a plaintiff "need not, at the class certification stage, demonstrate that a single record, or set of records, conclusively establishes class membership.").

On several occasions the Third Circuit has expounded on the meaning of ascertainability. *See generally Hargrove v. Sleepy's LLC*. 974 F.3d 467, 470 (3d Cir. 2020). While an exposition of

---

[2] The two requirements of ascertainability often coalesce because even when there is objective criteria to determine class membership, if the proposed method to identify class members is based on subjective information, like affidavits, it is unreliable and presumably administratively infeasible. *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, No. CIV. 11-5149 NLH/KMW, 2014 WL 2920806, at *7 (D.N.J. June 27, 2014); *see also*

8

*Marcus* and its progeny is beyond the scope of this opinion, an examination of the factual circumstances in *Byrd* will help establish the contours of the ascertainability requirement. *Byrd v. Aaron's Inc*., 784 F.3d 154, 161 (3d Cir. 2015), as amended (Apr. 28, 2015). *Byrd* involved class certification under the Electronic Communications Privacy Act for individuals who purchased or leased computers with spyware that was subsequently installed and activated without their consent. *Id.* at 160. The class definition included both the purchasers/lessees and their household members. *Id.* Ascertainability was not an issue for the purchasers/lessees because the defendants kept detailed records enabling identification. *Id.* at 169. The Third Circuit concluded the household members were ascertainable, even though no evidence as to them had been submitted, because the plaintiffs could identify them by matching addresses in the public records with that of an owner or lessee that had already been identified. *Id.*

Plaintiff has demonstrated the class is defined with reference to objective criteria. The proposed class consists of those persons: (1) who worked at or reported to one of Defendant's facilities; and (2) were terminated without cause on or within 30 days of February 9, 2019. Put more generally, Plaintiff's proposed class consists of former employees of Defendant Dubell who worked at specific locations during a definite time period and were terminated within a definite time period. These are objective inquiries and the proposed means of determining membership involve objective evidence, specifically Defendant's business records.

Likewise, Plaintiff has shown there is a reliable and administratively feasible mechanism to determine class membership. Plaintiff has pointed to two types of evidence which can identify class membership. First, Plaintiff points to Defendant's roster of full-time employees which will show the employees that were still with the company on February 6, 2019—the day they were notified of their impending terminations. Second, Plaintiff notes there is likely a mailing list within

9

Defendant's records pursuant to which the February 6, 2019 notice of termination was sent. While the mailing list would be more than sufficient to satisfy this requirement, its absence is not fatal. Plaintiff could supply affidavits from the purported class members and compare them to Defendant's payroll list as of February 6, 2019. This comparison would be no different from the one in *Byrd*. Just as the household members could be identified through matching their addresses in the public records with the lessees already identified, the class members here can be identified by matching those employees who submitted affidavits with the employees who appear on the payroll records for February 6, 2019. This would allow Plaintiff to verify which employees were terminated on February 9 or within 30 days thereafter. The Third Circuit has countenanced this approach as it noted in *City Select Auto Sales* that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." 867 F.3d 434, 441 (3d Cir. 2017).

These records would allow Plaintiff to identify class members without relying on the putative members "say so" and also provide Defendant with a suitable and fair method of challenging purported membership in the class—a right Defendant is absolutely entitled to. Moreover, the business records would obviate the need for a series of mini trials or extensive, individualized findings of fact. Accordingly, Plaintiff has satisfied the ascertainability requirement.

### B. Rule 23(a) Requirements

#### i. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed.R.Civ.P. 23(a)(1). The impracticability of joinder does not simply relate to the sheer number of class members, but also the impracticability of plaintiffs filing suit when the

individual stakes in the action are relatively small. *In re Paulsboro Derailment Cases*, No. CIV. 12-7586 RBK/KMW, 2014 WL 1371712, at *6 (D.N.J. Apr. 8, 2014) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–227 (3d Cir.2001).

Plaintiff alleges in the Complaint that approximately 157 employees were terminated by Defendant on February 9, 2019, or within 30 days thereof. By Defendant's default, Plaintiff's allegation regarding the approximate number of members is deemed admitted. Given the number of prospective class members involved, approximately 157, the Court is satisfied that joinder would be impracticable in this case. *In re Spring Ford Indus., Inc*., No. 02-15015DWS, 2004 WL 231010, at *6 (Bankr. E.D. Pa. Jan. 20, 2004) (finding the "numerosity" requirement had been met when the class members ranged from 150 to 270); *In re Kaiser Group Int'l, Inc*., 278 B.R. 58, 64 (Bankr.D.Del.2002) (certifying class of 47 members). Therefore, the proposed class as defined satisfies Rule 23(a)(1).

   **ii. Commonality**

Under the "commonality" requirement, the plaintiff must demonstrate "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Because commonality will be satisfied if the named plaintiff shares *at least* one question of fact or law with the grievances of the prospective class, it is easily met. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). For instance, if all class members are subject to the same harm or a defendant has acted pursuant to a common design, the "commonality" requirement is met. *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa 2000). This makes WARN Act claims particularly amendable to

class action treatment as allegations of mass layoffs almost invariably involve common questions of law or fact.

Here, Plaintiff alleges common conduct by the Defendant and a common harm suffered by the class members: Plaintiff and the putative class members were terminated by Defendant without proper notice as required by the WARN Act and NJ WARN Act. Thus, the liability determination will necessarily entail consideration of the following common issues:

(1) whether Defendant employed more than 100 employees;

(2) whether the class members are protected by the WARN Act;

(3) whether Defendant issued notice to its employees on February 6, 2019, informing them that they would terminated on or around February 9, 2019;

(4) whether those terminations occurred within 30 days of February 9, 2019;

(5) whether the class members were "affected employees";

(6) whether the class members were terminated without cause;

(7) whether the class members were terminated without 60 days advance notice;

(8) whether Defendant failed to pay the class members 60 days wages and benefits; and

(9) whether Defendant paid any severance to the class members.

Therefore, the commonality requirement of Rule 23(a)(2) has been met.
### iii. Typicality

Typicality requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). To some extent typicality overlaps with commonality. "Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Stewart v. Abraham*, 275 F.3d at 227 (citation omitted). Generally, in cases in which the commonality element is satisfied, the typicality element will also be satisfied. *Id.* The focus of the

typicality inquiry is on whether the interests of the class representative are sufficiently aligned with the interests of the absent class members, i.e., that the named plaintiffs do not have markedly different factual circumstances or present a legal theory different from the rest of the class. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), as amended (Oct. 16, 2001).

Based on the allegations in the Complaint, Plaintiff is typical of the class he purports to represent. His claim, like the claims of the rest of the class members, is based on the same underlying event—the February 9, 2019 terminations and those within 30 days thereafter. Plaintiff claims that neither he nor any of the putative class members received 60 days advanced notice of the terminations or wages and benefits to which they were entitled. While there is a difference between Plaintiff's claim and those of the putative class in the amount of damages recoverable based on wages, years of service and benefits, this does not preclude a finding of typicality. A claim is not atypical if there are some factual difference, as long as the "claim arises from the same event . . . that gives rise to the claims of the class members, and . . . is based on the same legal theory." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Plaintiff's claim is based on the same legal theory as the class's, namely, that such firing violates the provisions of the federal WARN Act and the New Jersey WARN Act. Accordingly, Plaintiff has met his burden of demonstrating typicality. *In re A-P-A Transp. Corp. Consol. Litig.*, No. CIV. 02-3480 WGB, 2005 WL 3077916, at *4 (D.N.J. Nov. 16, 2005) (concluding typicality requirement was met where representatives' claims under the WARN Act were based on the same set of operative facts as the putative class members, namely, termination without the proper 60 day written notice).

    **iv. Adequacy**

The final requirement under Rule 23(a) is the adequacy of representation. The named representative of the class must fairly and adequately represent the interests of the absent class members. Fed.R.Civ.P. 23(a)(4). This diverges into a two-fold inquiry. First the court must examine the qualifications of the counsel that represents the class. *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283, 312 (3rd Cir.1998). When class counsel is competent, experienced in class action lawsuits, and vigorously represents the interests of the class, the first prong of the adequacy of representation test is satisfied. *Id.* at 313. Second, the court must ensure there is no conflict of interest between the named representatives and the rest of the class. *Id.* at 312.

Plaintiff contends and this Court agrees that class counsel is well qualified to represent a WARN Act class. Lead counsel regularly litigates federal court matters, including class and collective actions pursuant to Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. Likewise, associate attorney Mr. Zucker has sufficient experience both prosecuting and defending against class actions in federal courts. Thus, this Court finds Plaintiff's counsel to be qualified, experienced, and generally able to conduct this litigation.

Moreover, this Court is satisfied that the named representative will fairly and adequately represent the interests of the absent class members. Plaintiff is a former employee of Defendant Dubell and seeks to assert a class action on behalf of similarly situated employees. As represented in the Complaint and by counsel, Plaintiff has the same claim as the putative class members, and therefore his claim does not conflict with the class. Accordingly, the requirements of Rule 23(a)(4) have been met.

  **C. Rule 23(b)(3) Requirements**

    **i. Predominance and Superiority**

In addition to satisfying the four requirements of Rule 23(a), Plaintiff must meet the requirements of Rule 23(b)(3). Rule 23(b)(3) mandates that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

Predominance measures whether the class is sufficiently cohesive to warrant certification. *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. Unlike commonality, predominance is significantly more demanding, requiring more than a common claim. *Id.* "Issues common to the class must predominate over individual issues." Id. (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313–14 (3d Cir.1998)). "In the context of alleged WARN Act violations, common issues will almost always predominate. After all, liability depends upon a single employer terminating large groups of employees*." In re Spring Ford Indus., Inc.*, 2004 WL 231010, at *8.

Superiority tests whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 309 (3d Cir.2005)

In this WARN Act litigation, all of the claims stem from the same set of operative facts and Plaintiff and the prospective class members proceed on one theory of liability: violation of the WARN Act for failure to give proper notice of the terminations that occurred on February 9, 2019, and within 30 days thereafter. While there are questions affecting only individual members, namely the disparate damage calculations, these issues are subordinate to the far larger, common issue of employer liability. Thus, this identity of claims shows that no individual class member has

15

an interest in controlling the prosecution. Additionally, this Court is not aware of any lawsuits initiated by potential class members involving the present matter. Further, a class action is a superior method of adjudicating this dispute. This case involves approximately 157 class members with relatively low-dollar value claims. Declining to certify the class may result in 157 separate actions on essentially the same facts with inconsistent outcomes or, perhaps, far more likely, many of the claims not being brought. Lastly, there is little to no perceived difficulty in litigating this matter as a class action because the putative class only seeks monetary relief which should easily be computed by the parties. As such, this Court finds that the requirements of Rule 23(b)(3) have been met.

### D. Notice to Potential Class Members

Federal Rule of Civil Procedure 23(c)(2)(B) provides that for "any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances." Plaintiff should submit a proposed form of notice to the class within 30 days.

### E. Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel. As previously mentioned, this Court finds that Plaintiff's counsel is qualified and experienced enough to conduct the proposed litigation. Accordingly, the Court will appoint them as class counsel.

### F. Default Judgment

Although Plaintiff has alleged facts sufficient to sustain a class action, the Court will deny Plaintiff's motion for default judgment. Plaintiff moved for default judgment on behalf of himself and the other members of the class. In a Rule 23(b)(3) class action, class members may opt-out or they are bound by the judgment. Fed. R. Civ. P. 23. As such, Courts typically direct "to class members the best notice that is practicable under the circumstances," which includes adequate

notice of the case and their right to request exclusion. *Id.*; *see also Fayun Luo v. Qiao Xing Universal Resources,* Civ. No. 12-0045, 2017 WL 2470248, *4 (D.V.I. Jun. 6, 2017) (denying a motion for default judgment where class had not been notified and given the opportunity to opt out yet).

Here, Plaintiff has not sent notice to the proposed class members, and therefore by entering a default judgment, this Court would be binding persons whose rights are at issue without first giving them proper notice. Accordingly, the motion for default judgment will be denied without prejudice and Plaintiff may re-file after the opt-out period has closed.

## IV.   CONCLUSION

Plaintiff has demonstrated by a preponderance of the evidence that the proposed class, as defined herein, satisfies all four factors under Rule 23(a) and meets the requirements of Rule 23(b)(3). Therefore, class certification is appropriate, and Plaintiff's motion will be **GRANTED**. However, the motion for default judgment will be **DENIED** for the reasons stated above. An order will follow.

Dated:        11/23/20                                              s/ Robert B. Kugler
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge