**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| BERNARD HEINZ, | : | |
| Plaintiff, | : | |
|  | : | Civil No. 19-8778 (RBK/EAP) |
| v. | : | **OPINION** |
| DUBELL LUMBER CO., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiff Bernard Heinz's Renewed Motion for Default Judgment (ECF No. 22). This motion is unopposed. For the reasons set forth below, Plaintiff's Motion for Default Judgment is **DENIED without prejudice**.

**I.     BACKGROUND**

Defendant DuBell Lumber Company ("Defendant" or "DuBell") was a maker and supplier of retail lumber and building materials that maintained facilities in Cherry Hill, Medford, Millville, Winslow, Vineland, and Pleasantville, New Jersey. (ECF No. 1, Compl. at ¶ 4). Defendant employed over 100 full-time employees, who, in the aggregate, worked more than 4,000 hours per a week. (*Id.* at ¶¶ 14, 28). Plaintiff Bernard Heinz ("Plaintiff" or "Mr. Heinz") was employed by DuBell until February 2019. (*Id.* at ¶ 5). On February 6, 2019, Defendant notified Plaintiff and similarly situated employees that it would be closing its operations and laying off employees at its facilities. (*Id.* at ¶ 13). DuBell terminated Mr. Heinz three days later on February 9, 2019. (*Id.* at ¶ 15). Within thirty days of February 9, 2019, DuBell had laid off approximately one hundred and fifty-seven (157) full-time employees. (*Id.* at ¶ 14).

On March 20, 2019, Plaintiff filed a Complaint against DuBell on behalf of himself and other similarly situated former DuBell employees, asserting that the DuBell employees were terminated without adequate advance notice in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act"), and the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J. Stat. Ann. § 34:21–1 *et seq*. ("New Jersey WARN Act"). (ECF No. 1). On May 7, 2019, a John Bambach executed a waiver of service of the summons on behalf of Defendant. (ECF No. 4). Despite this, Defendant never filed an answer or other responsive pleading. As such, on May 28, 2019, the Clerk of the Court entered default against DuBell Lumber at Plaintiff's request. (ECF No. 5). On July 8, 2019, Plaintiff filed a Motion for Class Certification and Motion for Default Judgment. (ECF Nos. 6, 7). Both motions were denied without prejudice on March 3, 2020. (ECF No. 9). On March 24, 2020, Plaintiff filed renewed motions for class certification and default judgment. (ECF Nos. 11, 12). On November 23, 2020, this Court granted Plaintiff's motion for class certification, but denied Plaintiff's motion for default judgment. (ECF Nos. 13, 14). The Court found that Plaintiff was not entitled to default judgment at that time because he had failed to notify potential class members of the action in compliance with Federal Rule of Civil Procedure 23(b)(3). (ECF No. 13). Plaintiff then filed a motion asking the Court to approve a class notice and opt-out form, (ECF No. 15), which the Court approved on July 13, 2021, (ECF No. 18). On December 6, 2021, Plaintiff filed the instant motion for default judgment. (ECF No. 22, "Pl. Mot.").

## II.     LEGAL STANDARD

### A. Federal Rule of Civil Procedure 55(b)(2)

Federal Rule of Civil Procedure 55(b)(2) allows a Court, upon a plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim

for affirmative relief. The Court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default except for those allegations pertaining to damages. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1146 (3d Cir. 1990)). The Court need not adopt a plaintiff's legal conclusions. *Id.*

While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in the Third Circuit for cases to be decided on the merits rather than by default judgment whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984). Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted in the instant case. If the Court finds default judgment to be appropriate, the next step is for the Court to determine a proper award of damages. *Slaughter v. Moya*, No. 17-6767, 2018 WL 3742622, at *1 (D.N.J. Aug. 7, 2018).

## III.   DISCUSSION

### A.   Jurisdiction

First, the Court must determine whether it has subject-matter jurisdiction over the plaintiff's claims and whether it may exercise personal jurisdiction over the defendant. *U.S. Life Ins. Co. in N.Y.C. v. Romash*, No. 09-3510, 2010 WL 2400163, at *1 (D.N.J. June 9, 2010).

The Court finds that it has subject-matter jurisdiction over Plaintiff's federal WARN Act claim pursuant to 28 U.S.C. § 1331. The Court has pendent jurisdiction over the New Jersey WARN Act claim because both the state and federal claims "derive from a common nucleus of operative fact" and "are such that plaintiff would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Turning to personal jurisdiction, the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest extent possible under the Due Process Clause. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998); *Carteret Sav. Bank, FA v. Shusham*, 954 F.2d 141, 145 (3d Cir. 1992) (citing N.J. Ct. R. 4:4–4(c)). The Court has personal jurisdiction over DuBell because it is a business entity organized and existing under the laws of the State of New Jersey and has its headquarters in Medford, New Jersey. (Compl. at ¶¶ 3, 4); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Accordingly, the jurisdictional requirements for default judgment are satisfied.

### B. Entry of Default

Second, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." DuBell Lumber, via an authorized representative, John Bambach, executed a waiver of the service of summons in May 2019. (ECF No. 4); (Pl. Mot., Ex. A. at ¶ 4). Since then, DuBell has made no attempt to answer or defend this action. Accordingly, the Clerk appropriately issued the entry of default under Rule 55(a) on May 28, 2019. (ECF No. 5).

### C. Fitness of Defendant

Third, the Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment. *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931. Section 3931(b)(1) requires Plaintiff to file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit" before the Court can enter default judgment for the plaintiff. These requirements do

not apply to DuBell, however, because it is a company. (Compl. at ¶¶ 3–4); *see also* (Pl. Mot., Ex. A at ¶ 9). Therefore, DuBell is fit for default judgment.

### D. Cause of Action

Fourth, the Court must determine whether Plaintiff's complaint states a proper cause of action against Defendant. The Court should accept well-pleaded factual allegations as true while disregarding legal conclusions. *DirecTV v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006). Plaintiff alleges that Defendant violated the WARN Act, 29 U.S.C. § 2101 *et seq.*, and the New Jersey WARN Act, N.J. Stat. Ann. § 34:21-1 *et seq.*, and that Plaintiff Heinz and the class members are therefore entitled to the following: (1) backpay for a period of sixty (60) days; (2) accrued holiday and vacation pay and benefits; and (3) one week of severance pay for each year of employment. (Compl. at ¶¶ 38, 56); (Pl. Mot. at 6).

#### i. WARN Act

Plaintiff seeks relief under the WARN Act, alleging that DuBell Lumber violated the WARN Act's notification requirement by causing a plant closing or mass layoff and terminating Plaintiff Heinz and other class members without providing 60 days' written notice. (Compl. at ¶¶ 17, 34–38).

The WARN Act states that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to each affected employee or their representative. 29 U.S.C. § 2102(a)(1). The 60–day period is the *minimum* for advance notice.[1] 20 C.F.R. § 639.2. The purpose of the WARN Act is to protect workers by providing them with notice of impending layoffs; such notice "provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and

---

[1] An employer may, under certain circumstances, be subject to a reduced notification period. 29 U.S.C. § 2102(b).

obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a). If an employer fails to give the requisite notice, the employees may sue for backpay for each day of the violation. 29 U.S.C. § 2104(a)(1)(A); *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 545–46 (1996). Employers who violate the WARN Act are also liable for benefits under certain employee benefit plans. 29 U.S.C. § 2104(a)(1)(B).

The WARN Act's requirements apply to employers who employ 100 or more employees, who in the aggregate work at least 4,000 hours per week (exclusive of overtime). 29 U.S.C. § 2101(a)(1)(B). A mass layoff is defined as the "employment loss at a single site of employment during any 30-day period," that is not the result of a plant closing, for: (1) (a) at least 33 percent of full-time employees and (b) at least 50 full-time employees; or (2) at least 500 full-time employees. 29 U.S.C. § 2101(a)(3). A plant closing is defined as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." *Id.* at § 2101(a)(2).

The term "single site of employment" is not defined in the WARN Act. "Courts faced with discerning the meaning of this term have turned to the interpretive regulations issued by the Department of Labor (DOL) for guidance." *United Mine Workers of Am., Dist. 2 v. Florence Min. Co.*, 855 F. Supp. 1466, 1474 (W.D. Pa. 1994) (collecting cases); *accord Gorini v. AMP Inc.*, 94 F. App'x 913, 920 (3d Cir. 2004) ("A 'single site of employment' is not defined by the statute. Accordingly, courts look to relevant Department of Labor regulations."). Per DOL regulations, "[a] single site of employment can refer to either a single location or a group of

6

contiguous locations." 20 C.F.R. § 639.3(i)(1). "Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." *Id.* at § 639.3(i)(3). However, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." *Id.* at § 639.3(i)(4).

As an initial matter, it appears that DuBell is subject to the WARN Act's notification requirement because it was a business enterprise that employed more than 100 employees who in the aggregate worked at least 4,000 hours per week. (Compl. at ¶¶ 28, 29). Further, it is plain that DuBell did not provide Plaintiff Heinz and other employees with at least 60 days' notice that it would be closing its facilities. Plaintiff alleges that DuBell informed Plaintiff Heinz and class members on February 6, 2019 that it would be terminating operations and laying off employees at its New Jersey facilities. (*Id.* at ¶¶ 13, 35). Three days later, on February 9, 2019, Plaintiff Heinz was terminated, (*id.* at ¶¶ 6, 15) and within 30 days, DuBell Lumber had laid off approximately one hundred fifty-seven (157) full-time employees, (*id.* at ¶ 14).

However, it is not clear from the facts alleged in the Complaint that these layoffs occurred as a "single site of employment" as defined in the Department of Labor regulations. Plaintiff does not specify how many employees worked at each of the six facilities listed in the Complaint, (Compl. at ¶ 4), so the Court cannot determine whether a sufficient number of employees were terminated at any single facility such that the terminations at that facility constituted a "plant closing" or "mass layoff" under the WARN Act, *see* 29 U.S.C. § 2101(a). Additionally, the Complaint does not indicate the geographic proximity of DuBell's facilities, whether the facilities shared personnel/equipment, and whether the facilities had a shared

purpose—all factors relevant to determining whether facilities collectively constitute a single site of employment. *See* 20 C.F.R. § 639.3(i)(3); *Gorini*, 94 F. App'x at 920–21 (concluding that the defendant's multiple facilities constituted a "single site of employment" because the "buildings were close together, and shared employees, job functions, and services"). Because the Court cannot conclude, based on the information provided, that Plaintiff Heinz and other class members are entitled to a default judgment as a matter of law, Plaintiff's motion must be denied.

### ii.  New Jersey WARN Act

The New Jersey WARN Act provides, in pertinent part, that:

> If an establishment is subject to a transfer of operations or a termination of operations which results, during any continuous period of not more than 30 days, in the termination of employment of 50 or more full-time employees, or if an employer conducts a mass layoff, the employer who operates the establishment or conducts the mass layoff shall: … [p]rovide, in the case of an employer who employs 100 or more full-time employees, not less than 60 days, or the period of time required pursuant to the federal "Worker Adjustment and Retraining Notification Act," 29 U.S.C. § 2101 et seq., or any amendments thereto, whichever is longer, before the first termination of employment occurs ….

N.J. Stat. Ann. § 34:21–2(a) (2007).[2] An "establishment" means "a single place of employment which has been operated by an employer for a period longer than three years …. 'Establishment' may be a single location or a group of contiguous locations, including groups of facilities which form an office or industrial park or separate facilities just across the street from each other." N.J. Stat. Ann. § 34:21-1 (2007). If the employer does not provide the requisite advance notice of a termination of operations, its former full-time employees are entitled to severance pay equal to one week of pay for each full year of their employment. N.J. Stat. Ann. § 34:21–2(b) (2007).

---

[2] The New Jersey WARN Act was amended in 2020. *See* 2019 N.J. Sess. Law Serv. Ch. 423, (https://pub.njleg.state.nj.us/Bills/2018/PL19/423_.PDF). In the instant matter, the Court applies the New Jersey WARN Act as it existed during the time of Plaintiff's termination in 2019.

The Court finds that Plaintiff has failed to state a claim under the New Jersey WARN Act because Plaintiff has not alleged that DuBell Lumber terminated 50 or more employees at any single facility, or "establishment." And, as above, the Court cannot determine whether Defendant's facilities collectively meet the Act's definition of an "establishment." As such, the Court cannot grant judgment on Plaintiff's New Jersey WARN Act claim.

## IV.    CONCLUSION

For the reasons expressed above, Plaintiff's Motion for Default Judgment (ECF No. 22) is **DENIED without prejudice**. An accompanying order shall issue.


Dated: 07/19/2022                                              /s/Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge

9